## Keerkeek et al. v. James.

March 26, 1943.

John T. Diederich and Max Lively for appellants.

Davis M. Howerton for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Appellants, R. A. Keerkeek, Nina, Corrinne and Phyllis Keerkeek, W. B. Whitt and Bess Whitt, plaintiffs below, conducted an insurance business in Ashland, and appellee, defendant below, a like business in the same city called the "James Insurance Agency."

In petition filed October 18, 1935, it was asserted that prior to June 15, 1924, Keerkeek and James were

conducting the James and Keerkeek Fire Insurance Agency in Ashland. Under a written instrument of the latter date, for $1,000 consideration, James sold his one-half interest to Keerkeek. It was provided:

> "With this transfer by me it is understood and agreed to that I will not enter the Fire Insurance business in Ashland."

Subsequent to the contract Keerkeek sold interests to his co-plaintiffs. It was alleged that since September 1931 defendant had written fire policies in violation of his agreement. Upon the pleading it was sought to recover of appellee the sum of $5,000, and to have permanent injunction.

Appellee denied the averments of the petition and alleged that the clause above quoted was interpolated under mistake or by fraud. That up until 1933 he remained in the firm writing fire policies, turning over commissions to the agency; that the agreement was against public policy; that the real agreement was that he should remain in the employ of the agency, and not to write fire insurance while thus employed. An amended answer was filed, curative in nature, asking reformation of the contract and pleading that since 1933 he had written fire insurance for other agents for small percentage, without profit. Reply joined issues.

The matter was referred to the commissioner who reported, though his report is not in the record. However, defendant excepted to so much thereof as held: (1) No mistake or fraud; (2) that the contract was valid, and had been violated, and as to the amount of damages allowed. Plaintiffs excepted on the ground that the proof showed damages of more than $5,000. The court overruled exceptions, adjudged $500 damages, and permanently enjoined defendant from engaging in fire insurance business in Ashland as long as plaintiff continued in business there. Both parties were granted appeal, but appeal is prosecuted by plaintiff, and in brief it is correctly stated that the only question is whether or not the award is adequate.

Mr. Keerkeek came to Ashland in 1916, and was employed in a hardware store. Some time in 1917 or 1918, James, his uncle, came to Ashland and began writing insurance; later the James and Keerkeek Agency was formed, with offices in the Savage Building, James

taking in his insurance business, and thereafter looking mainly to all the business. Mr. Henderson looked after fire insurance, but left the agency about the time of the contract. James, with some plausibility, insists that he was only selling his interest in the fire business while continuing as a member of the agency, and with that understanding remained in the offices, using same equipment, telephone, etc., writing life insurance and assisting in the fire business, turning all commissions over to the agency. Things apparently worked smoothly under this arrangement until 1932, when the agency was dissolved and James was directed to leave the office and building.

Keerkeek agrees that James remained in the office until 1932, writing life insurance, with some assistance to the agency in writing automobile and fire policies, but it was understood that James was not to "tear himself" on the latter, because he had sold his interest. James said that if he had been allowed to stay he would have carried out his conception of the agreement with a minimum of overhead. The separation arose over disagreement as to the acquisition of or continuing in the fire business by the firm, which James did not relish.

Appellant, insisting that it was entitled to a judgment for the amount sought in petition, bases its contention on an audit showing appellee's business from 1932 to August 1, 1937, fortified by testimony of persons who had been engaged in the insurance business. The units of measurement: (a) The average gross commissions (on fire business) which, for the City of Ashland, were said to range from 15 to 35 per cent; (b) the cost of doing business of an average fire and casualty agency, from 5 to 6 per cent of gross policy premiums collected; lastly, the market value of an established fire and casualty agency (in Ashland) was estimated to be a sum equal to two and one-half times the annual commissions on business written by the agency over a term of years.

The audit, to which formula was applied, was made by Mrs. Whitt, covering the period from January, 1932, to August, 1937. It consisted of more than 400 pages, copied from appellee's records, and summarized in exhibit as follows: Total of fire and casualty business of James during the period, $24,094.30, of which $10,152.93 belonged to Keerkeek agency (old customers); of the total, $13,941.37 was new business of James. The Keer-

keek renewals during the period were $2,945.83; of James, $8,287.63. Keerkeek claimed commission on the James renewals of the alleged Keerkeek business. Another item was based on the claim that Keerkeek would have obtained at least 50 per cent of James' new business, if the latter had not violated his agreement, and this was estimated at approximately $9,600; without giving precise figures, or items more in detail, and applying the formulas set up by the experts, his total claims amounted to more than $6,000.

It is noted that James' gross business was reached by taking the total premiums shown on defendant's books. It may be remarked that the summary or summaries do not show that the gross on premiums on policies issued to former customers, or on new business acquired by defendant were limited to premiums on fire insurance business of defendant, who it appears carried on a fire and casualty business, which latter, appellant, we think, erroneously contends was involved.

At this point it may be suggested, whether the situation was taken into consideration by the commissioner or chancellor, that giving the pleadings strict construction it may be seriously doubted if appellant was entitled to any portion of premiums on fire business acquired by appellee after the date of the filing of the petition, October 18, 1935. The relief sought therein was a judgment for damages in the sum of $5,000 as recompensation for "all of the acts of defendant," since the date of the contract of June 1924.

An amendment was filed on January 8, 1937, but this only prayed as in the original petition, and was curative only to the extent of alleging more fully, grounds for injunction. In the absence of report of the commissioner, and opinion we are unable to determine what matters were or were not considered in fixing the damage, and we appreciate their task in undertaking to reach any sort of conclusion as to plaintiff's damage to be gleaned from the 400 or more loose pages, without helpful explanation. Mrs. Whitt explains the audit, which she merely introduced as "Exhibit No. 1," in about one page of typing. She admitted she did not know what period the audit covered, and had no experience in the insurance business. She failed to qualify as an accountant or auditor, and was shown to have been mistaken in calculating the total of gross premiums received by de-

fendant on all business over her accounting period. She does not show in audit or explanation how much of the gross of defendant might have been brokered business, or business clearly not contemplated in the contract.

There is another audit in the record, which undertook to show business of former customers, made primarily from the audit of Mrs. Whitt, by Mrs. Keerkeek, who showed some experience in the business. She does not testify as to the accuracy of the James' audit, but merely says it was what was brought to the office as a copy of defendant's records. She did not differentiate as to character of business shown by defendant's books. Nor does Mr. Keerkeek in his evidence undertake to separate the classes. Mrs. Keerkeek said she analyzed the accounts brought to plaintiff's office, with particular attention to names of insured. She took as example the name "Millard Fields, who was our assured until the time he left our office, and who had a casualty policy written in 1932." She followed the same plan through the whole list, adopting the conclusion shown by Mrs. Whitt's audit as to gross premiums. She does give the names of several persons who told her they had taken the business to defendant, and said there were a number of others.

Mr. Keerkeek asked to give the names of some customers lost, following defendant's operations, named one or two persons. After the audit of defendant's books was introduced, and to which he had access, he was again requested to name others and said, "I am going to have to pass that a little bit; I don't know."

Appellee testified that he had made a memorandum (exhibited) from his books, embracing commissions from fire and casualty business from January 1, 1932, to August 1, 1937, in which he shows a total of premiums collected in the period. This is broken down as follows: Of the total, $5,824.96 was fire and casualty business in a company or companies represented by Maddox, who says he received all commissions and paid a brokerage fee of 5 per cent to the James Agency. Maddox testifies that he wrote some fire policies for the agency, but never solicited any business from the customers of the Keerkeek Agency, and wrote no such, except in one case. Included in the total was $96.83, premiums on policies for school buildings, this business being allocated by the Board of Education to various agents. There was noted

"renewal business unjustly claimed by Keerkeek, $3,-765.80," and "other business written by the James Agency, $19,761.05."

James, testifying, said that his profit from his business, after payment of expenses, was $830.97; this covered all business from January 1, 1932, to August 1, 1936. He listed his fire business at $2,106.07, on which he estimated his net profit at approximately $280; he explains that his overhead did not include any sum for his personal services or solicitors, and that the first year was unfruitful, he apparently paying more attention to the life business.

It is noted that his summary, excluding the brokered business, and other items, made his estimated total business about $2,000 less than the audits referred to above. He shows also that the Maddox premiums were included in the audits, when as a matter of fact, according to his and Maddox' testimony he received a brokerage fee of 5 per cent, which he said was not profit to him.

As to the special farm business, he said that he did not think the Keerkeek agency wrote this class of business. He explains that none, or very few, of the renewals claimed by appellant would have gone to that agency, and insists that the business was built up by him during the eight or nine years he was with the agency, following the contract. He was taken over a long list of the names included in the audit, and admitted that much of the business was new, but in almost all instances unsolicited, which, perhaps, enters more into the question of damages for destruction of the value of the Keerkeek business.

It would be of little avail to prolong this opinion by giving testimony more in detail. It may be conceded that appellee's notion of his liability was based on a wrong conception of the meaning and effect of his contract, and his rights growing out of his remaining with the appellant agency after the contract was written. It may also be that the brokerage understanding with Maddox was an evasion of the contract, but there is no proof warranting such a conclusion. If this were true, then the entire commission received by Maddox might be considered as James' profits, which would increase his figures. This might be said of any fire business which appellee wrote during the period. But here we have James' proof

as to the amount of his profits on all, and on the fire business, against which there are audits which are thrown into the record without what may be termed "helpful explanations."

While we have not taken the trouble to make minute calculations, if they were made by the commissioner or court it might develop that, including the claimed fire business only, the amount reached by the chancellor would be approximately correct.

The mild claim by appellant that it was entitled to premiums on casualty business is not sustainable neither in pleading or proof, nor in contract. The case calls for application of the rule that in equity cases the chancellor's judgment must be given the weight, and we find nothing which could create in our minds more than a doubt.

Judgment affirmed.